And what we're going to do before we begin the argument on merits is we're going to address the show cause order and the improper confidentiality markings, and I think the court has some questions for both counsel about that. Yes, Your Honor. As I read the responses to the show cause order, both parties attempt to justify the confidentiality markings on the ground that a number of these documents, including the court's final order in this case, were marked to be under seal. And I guess the first question I have is who asked for the sealing of these documents? No one, Your Honor. The court sui sponte sealed it. Sui sponte sealed it? The court sealed it is my recollection of the events of that day. Well, let's begin with the final order, which is attached to the Blue Brief. Was this a proposed order that was submitted by Spellbound to the district court? It appears as Addendum 1 to the Blue Brief. The order dated June 6, 2012, Your Honor. Yes. Well, it seems to be dated July 3, 2012. I believe the draft order was submitted following the colloquy in the court on that day. Mr. Brown certainly can confirm that. But that's my recollection of the events in terms of the genesis, if you will, of the order. It followed the discussion with respect to the settlement and the settlement terms, and then the judge placing the matters under seal. And then it was put into the order that was then submitted to the courts. So the order that we have here in the addendum, the order denying the motion, the Rule 60 motion, that was a draft order prepared by Spellbound? That would be my recollection, Your Honor. I don't remember that we prepared it. I'm looking to Mr. Brown, but I thought that they prepared the draft order with respect to that following the court's ruling and discussion, which would be typical of a judge's court. And when it was submitted, it was proposed to be under seal? That was correct. And what justification could there possibly be for sealing this order? I believe that's what the court indicated it wanted done. I'm not... No, but I'm asking you what justification is there for sealing the order? It doesn't have any confidential business information, and it doesn't. I understand that, Your Honor, and I did not oppose that designation, and that was what the court had indicated it wanted. So from our perspective, if that was what the court wanted... Is there any confidential information in this order? I don't believe so, Your Honor, in terms of if that had to be litigated on the issue of whether or not there was confidential information. I think we would be hard-pressed to say that there was confidential information that would meet some standards. Now, in Judge Carter's courtroom and what he does, it might be different. But in the way you asked the question, I don't think there is confidential business proprietary information in that order. Well, let's ask Mr. Brown. Is there any confidential business information in this order? One thing I'd like to correct before that, Your Honor, Spellbound did not submit a proposed order on this. This was an order that was prepared by the court and sealed by the court. And I don't believe that there is any confidential information. I believe what Judge Carter was thinking when he sealed this was that the parties had engaged in their negotiation. He sealed the record that he had placed on March 20th. He'd sealed that. And to the extent that this order, this Appendix A-014, reflected that, I think that must have been what the judge's thinking was. But Mr. Dickey is correct that it was a sua sponte action of the judge. And to finally answer your question, we don't think that there is anything in there. We think it could be unsealed. And I think the concern of the court is how do you issue an order in this case? We may be able to go back to Judge Carter, stipulate, get this part completely unsealed so this court has something that's unsealed. Well, is there anything confidential in any of the sealed material before the district court? Your Honor, there may be. I think what the court was thinking about and what he indicated, he had made some comments on the record during the course of the discussions in open court with respect to his view of certain of the issues dealing with the patents at issue. He, I think, was concerned, at least as he articulated, as I recall it, that those comments might be used somewhere down the line by someone else with respect to the patents that are held by both Spellbond and PHC, Pacific Handicutter. And therefore, he didn't want those to be part of a public record. That's the only thing. That somebody would be critical of the patents and that was a ground for sealing it? Because he made comments regarding the validity of the patents with respect to those patents in the future. If there was litigation with other parties, those comments might be used with respect to… Would that possibly be a justification for sealing anything? Your Honor, I don't know what was in Judge Carter's mind. I'm just telling you all I know is what he expressed as perhaps the reason he did that. I can't… Well, in the view of both parties, is there anything that was sealed here that's confidential? I don't believe so, Your Honor. What of Mr. Brown? The only thing that I would note, in the entire record of the court, of everything that is sealed, there may be just some financial information that does meet the grounds of being confidential, but that's just a snippet of information. Otherwise, the vast majority of this record… Which doesn't appear in any of the briefs. It does not. It doesn't in the briefs. We could unseal that. Spellbond would be fine with that, Your Honor. And I think we could achieve that with the district court and have all this record unsealed. Well… I have just one question. I have just one question. I mean, there are a number of places where there is sealed, bracketed material in the briefs. Can we ignore that? I don't want to sound disrespectful, but so much of it, some of it has case citations in it. Can we just assume, for purposes of conducting a helpful and meaningful oral argument, that to the extent there is anything marked confidential because of brackets in here, that we don't need to worry about it? I think the answer to your question, Judge Schall, is yes, because some of the bracketed material with respect to the legal argument was done that way so as not to run afoul of the court's order with respect to bringing into the argument with the legal discussion things that had been sealed. And we grappled with how to do that in light of the breadth of that order, but from an appellant's standpoint, our concern was not to be in violation of a court order, so we tried to bracket the material. As far as we're concerned from the appellant's side, all of that can be disregarded for purposes of the appeal and any opinion or discussion that the court would care to have. At least that's the appellant's position. I think that the question you're getting at, Judge Schall, how do you do this without completely disregarding what the district court did? Well, no, I'm not saying disregarding what the district court did. I'm saying there is so much material marked in the briefs that is bracketed and one refers to it in the course of oral argument here in open court. My question was can we disregard that? I have an answer for you. If you look at A0004, that's the protective order that was referenced in the order to show cause, and in there, the protective order that existed at the trial court, Judge Carter didn't find himself. He said when I'm going to have my trial, none of this stuff applies. A trial that's fair game and stuff that's sealed is going to be open to the records, and I think that that should probably apply to this court as well. Then what was your justification for marking it if it applies here as well? Well, because that's something that the court can do. That's not something that I can do. I mean, when I'm looking at complying with the court's order, I could face an OSC from this court. I could face an OSC from Judge Carter for unsealing his record. I don't think this court would run into that problem. All right. Would you do, both counsel get together, if there is some confidential information in the sealed record here, would you identify for us specifically what it is in a joint letter, and let's say by Wednesday of next week? We can do that, Your Honor. Okay. And we'll discuss how to handle this question because it's evident that there's a lot of material here that shouldn't have been sealed because it's not confidential. Is it a problem if we do a stipulation with the district court to get it unsealed as well? That would take time. I think the court needs to discuss how it's going to handle this, and we'll advise you about that. I mean, our problem was we had the court order unsealed and we tried to live with and deal with that. I understand what you're saying. Any other questions on this? I just want to confirm. So we can, for purposes of oral argument, can we ignore the brackets in the briefs? I believe so. We're never bound by district court order. I'm comfortable that, at least from our perspective, there's nothing in the oral argument that is confidential in any way, and our concern in the brief was simply not to run afoul of a district court order that was entered, and for purposes of the argument, we're happy to have you disregard that, and I say that respectfully to the district court's order. Mr. Brown, my client would not be harmed and help with consent to having our entire brief filed publicly, provided we're not offending the district court. I see. Okay. All right, why don't we begin the arguments on the merits. Mr. Dickey? Thank you, Your Honor. May it please the court, my name is Dean Dickey, and I do represent Pacific Handicutter, and Stanley Black and Decker are also present in court this morning. This is Mr. Mark Marinovich at the council table, who is president and chief executive officer of Pacific Handicutter. Let me begin by asking a simple question. What did the words safety utility knives mean in the context of the presentation of a settlement to the court on the day of trial? Those words in and of themselves, without a context, are ambiguous and provide no, shed no light on what was meant by the parties for purposes of a covenant not to sue, thereby preventing future litigation by the parties over intellectual property rights. Absent putting those words into a context, the words themselves clearly have no meaning and make it difficult, if not impossible, for someone to determine what was or was not within the scope of the covenant not to sue. I guess I'm not clear of the import of your argument here. I mean, you could take any words out of an agreement and say, what did those words mean? I'm not sure, I mean, our understanding of the way this went down is their clients were contacted, lawyers made representations that parties were in agreement to the language and the settlement. I don't know where it gets you to say there are words that take it out of context. We can't be persuaded how people necessarily would understand. Because that goes to the very essence of whether or not there was an agreement, whether there was a meeting of the minds on what was meant by the words and the scope of the covenant not to sue. Our position on it is that even though the words were read into the record and there was a general agreement as to an outline, there were a number of things yet to occur, including a joint press release which set forth and when considered in context, shed some light on what is meant. There was also to be a written agreement setting forth all of the terms of the agreement in some detail. Well, it's not, the general practice is that the agreement is the agreement. One doesn't normally look to press releases to then interpret the agreement. If the parties had an opportunity to read and think about the agreement. Well, the agreement as stated in court is different from what I meant as the agreement. There was to be a writing embodying the terms and the details and as the court well knows, the devil is always in the details in terms of the parties were unable to come to an agreement and this appeal flows from the fact that the party, the intent of the parties clearly is different and therefore our position here is and what we're asking this court to do is at the very least remand the case for an evidentiary hearing on the intention of the parties because if the intent of the parties with these words is what Spellbound would have this court believe, that it has somehow now acquired the rights to use intellectual property, patents and so forth. But that argument suggests that you agree to those words because your intent was to construe them differently. And that would mean there and our position is off. But then why, I mean you are the ones that ultimately ascertain, no we can't sign this because the terms are problematic, at least one of the terms are problematic. I mean what you're suggesting seems to be the scenario is that you agree to it, you have your interpretation of what it means and then in some subsequent proceeding that may or may not become a relevant factor. Yes, but if the words are ambiguous and the court was obligated under California law to have an evidentiary hearing because clearly it became evident that what was intended by the Stanley PHC parties in resolving a lawsuit was interpreted differently by the Spellbound folks and Spellbound then wants to use the vague words safety utility knives to confer upon them effectively intellectual property rights in anything that they call a safety utility. So did something happen between the court proceeding and then the exchange of the settlement agreement where you became aware that they had this interpretation of the agreement that you never contemplated? Absolutely, there were discussions between the parties during the course of the writing of the written agreement defining exactly what the scope and intent of safety utility knives was because the case involved two products. Well I thought the scenario could easily be wrong on this, but at some point subsequent to the court proceeding there was a draft and that you all created the draft, your side, and sent it to the other side. They signed it and then it came back to you and somebody said no, no, no. And in the course of the discussions over the draft it became clear that the parties were not on the same page. So did these discussions happen between the time you sent the draft to the other side and the other side signed it? So between that time and the time you got it back that's when you suddenly… The discussions took place between our counsel in California and Mr. Brown at some point in time whether it was with respect to when they signed the draft, I don't know, but it did occur because I was not the party that had that discussion, it was related to us. But it became clear and then there was a conversation with the court in chambers in which the court specifically asked the parties what their intention was with respect to the scope of the covenant not to sue. The whole idea behind a covenant not to sue in settling the case is that Pacific Handicutter and Spellbound would no longer litigate between themselves involving two products and the patents related to those two products. And the court specifically asked Spellbound whether it was their position that this settlement agreement allowed Spellbound to use the intellectual property of knives for Stanley Black and Decker that were never at issue in this case. And the response was maybe and the court concluded from that that there was at least an issue and that's why we filed the 60 motion. But why does the fact that there's an issue about the interpretation of the agreement mean that there was no agreement in the first place? Because there was no meeting of the minds that the language was ambiguous just because... I mean that would suggest that every time there's a disagreement about the interpretation of a contract that the basic issue is whether it was a contract in the first place. I mean, you know, contract issues get litigated all the time and nobody suggests that because the written language is subject to differing interpretations that that suggests that the contract is void. Well no, indeed in some of the cases that are cited in the materials in fact the language that was presented to the court is broader than what the court construed. Here the issue is that the district court never construed the meaning of the terms. The district court never... Why did it have to? Because it was brought to his attention that the intent of the parties, there was no meeting of the mind with respect to the scope of a covenant not to sue. And therefore if there was ambiguity the court was obligated to hold an evidentiary hearing and we submit that on the... Why? I mean, I don't understand why. Because if there was no meeting of the minds... But that's just saying that there's a dispute about what's meant by the terminology that you adopted. Well, but that begs the question... Let me just ask a question. Sure. Do you agree that the district court here had no business interpreting the agreement and that that's a matter for the state courts? No, I think it was in front of the district court and the district court had every right based upon his representation that if there were issues with respect to the drafting of the written agreement it could be brought back and presented to him. I don't think it was... What's the exact language that the district... Apparently there was an order that had language like that? No, actually it occurred when we were in the courtroom I asked the district, I said if there were problems in drafting the agreement... Where do we find that? I think it's in the transcript and I believe, Your Honor, it would be found in the appendix at A-16. Oh, no, that's incorrect. That's in relation to a case. It's in the A-71, lines 21 through 23. I'm sorry, A-71? A-71, lines 21 through 23. And this occurred, this is the transcript from... From the day of the settlement in asking whether or not this case could be dismissed with prejudice without cause on that day, clearing the court's calendar and I believe I said something to the effect of if there's a problem we can come back to the court. He said yes and then he raised the issue about whether there was drafting issues in the language that he used at that citation. So clearly the district... Why does that suggest that the court retained jurisdiction to interpret the agreement? Well, because, Your Honor, at the time that this took place the question before the lawyers was can this case be dismissed today as opposed to waiting for the final written agreement to be submitted and executed. And the position taken was the case can be dismissed with prejudice without cause based upon the representations of the lawyers prior to the completion of a written agreement leaving open the possibility that if there were difficulties in drafting the agreement you could come back to the district court and raise those issues in discussion. That is not an unusual proposition for trial lawyers in the district court in trying to get a case resolved and dismissed for the parties in front of the court to come back even after the dismissal if there's a problem in actually going forward in finalizing the ultimate settlement. Mr. Dickey, let me ask you what the judge at line 23 says. We can always take it off of what I call the JS6 file. What is that? That's something in the California district court where they put it into a closed case file, I believe. I'm not exactly sure what their terminology, their nomenclature is. Let me ask you this. The district court seemed to say in denying the motion for relief seemed to say, look, we have a binding settlement here based on the proceedings that took place on March 20th. There's not a right controversy here. In other words, it was a valid settlement agreement and so forth. Assume for the moment that this court agrees and says the issue here is contract formation, the settlement agreement was validly formed, there was an agreement, and we're not going to interpret it. What will happen going forward? The parties will be in a position then where the district court and this court will have said there was a valid settlement agreement based on the March 20th, 2012 proceedings. Will it be somebody's job then, I know you would disagree with that result, but assuming that result obtains, would it be somebody's job then to somehow bring this dispute about the meaning of, I guess it's paragraph 2, to a head? What would happen? That's an interesting question because there are a number of scenarios that we have thought about that might happen. For example, if Spellbound were to begin producing a knife and call it a safety utility knife that infringed on a patent that Stanley Black and Decker had with respect to one of its knife products, then the argument would be Stanley would say you're infringing on our product, they could sue for infringement, and Spellbound could defend on the ground that, wait a minute, there's a covenant not to sue for a safety knife. And then you would get into the issue of what... And now you would be in a patent lawsuit down the road somewhere over an issue which could have been taken care of in front of the judge who handled the settlement discussions. And Stanley is a particularly ripe example because in this case, Stanley Black and Decker was a party not because it had any intellectual property, patents or otherwise, at issue. It was simply brought into the case because it sold a knife manufactured by Pacific Handicutter in the public marketplace. Let me ask you, as I understand it, you're asking us in this case to send it back to the district court and for at least, you know, to say either say there was no... For the district court to determine... You want to say there was no meeting of the minds here, right? Right, but we're not asking this court to make any determination as to the scope of the meeting of the minds. What we're asking this court to do is to remand the case to the district court either for trial which would be effectively determining the issue or on a more limited basis remanding to the district court to say the language is ambiguous, it should have had an evidentiary hearing as to the meaning of the words and the scope.  We want the district court to determine by evidence the intention of the parties when they entered into the scope of this settlement. How is that different from what I said? Well, I'm not asking him to say there was or was not agreement, I'm asking him to construe the nature of the agreement. If that's the same then perhaps I am saying the same. So you're not asking us, you wouldn't want us to say yes, there was a binding agreement and here's what it means. No, we are not because I think that is not the role of this court on these facts. I think the issue is if you take the objective factors that are uncontroverted in the record regarding the circumstances and then the position articulated by the plaintiff as well as the position and quite frankly we have yet anywhere to see what Spellbaum says the intent of the parties were with respect to that language and that would be interesting because clearly based upon what we've said there's a difference on that issue. But we are not asking you to resolve that issue, we think it should go back to the district court for an evidentiary hearing to determine those answers. Just going back to page 71 which you referred to, I just noted that the court statement before I think what you got into was do you want me to dismiss this case on today's date, do you want me to hold this case until I get a final document, a signed form, this is binding by the way, it is now binding between the parties and this is what I want you to explain what he meant and if we get down to the third paragraph of the 15th page I am not going to be too concerned. Was that a reference to something real or was that a hypothetical? My interpretation he said if he gets down to specific language and myths I'm not going to be concerned, come in and we'll talk about it and we'll evaluate it which is otherwise why would I have historically taken the position in other courts that it's okay to dismiss it with prejudice without cause because that stops the meter, it gets the case resolved, but if there is a drafting issue the court is available to come back because it was the court that participated in the discussions, it was the court that made comments, it's the court that called Mr. Marinovich and Mr. Votomato the principals of two companies to meet and to resolve the case over a noon hour at his direction. So it seemed to me the court had already interjected himself and he was saying to us I'll dismiss it and I'm available to come in if there is some drafting problems, I'm not going to be concerned about doing that. It was a hypothetical and it was nothing specific. My only point, your honors, on this is that just because a general framework of a settlement is read into the record it does not mean that there is no ambiguity. Spellbon has said the deal is the deal and I submit what is the deal? How does anyone know on this base of this record what specific conduct is or is not within the ambit of the covenant not to sue? And what we're doing by not resolving this issue in this court is inviting further expensive litigation in other forums that was never, at least in our view, never contemplated and the district court should have the opportunity to resolve that. Thank you. I have one more question. Yes, sir. My recollection is that we have cases about settlement agreements and I'm not sure they're discussed in the briefs here. My recollection, and it may be incorrect, is that we have said that the interpretation of a settlement agreement is a matter of state law. It's not something over which a district court in a patent case has jurisdiction and if there's a dispute about the interpretation of a settlement agreement that has to go to state courts or if it's a diversity case to federal courts. Is my recollection right about those cases? I'm not familiar specifically with what case. I know that there are cases by this court in which the district court construed a settlement agreement. I know that there are cases here where this court has affirmed the absence of an evidentiary hearing because the district court actually construed a settlement notwithstanding the general terms articulated. I don't think that anyone focused on that particular line of cases in the briefs. Okay. You may well be right. That was not the focus of the cases that have been cited with respect to this court's addressing construction of settlement agreements by district courts. Okay. Thank you, Mr. Brown. Thank you. I was going to save some time. Oh, we'll give you two minutes. Thank you. Mr. Brown. Good morning, and may it please the court. William Brown on behalf of Appellee Spellbound Development Group, Inc. With me is Matthew Wegner. I have three points that I want to make as to why the district court did not abuse its discretion by denying… Are you familiar with the line of cases that I recall about no federal jurisdiction to interpret the settlement agreement? I think the case that you're referring to, Your Honor, is Inimed v. Kuzmak, and that was a case from 2002 from the district court in California, and the district court extensively talked about the issue of whether California procedural law would apply in the federal court with respect to whether you had assent and you had actually formed a contract, and that case came up to this court and was affirmed in an unpublished opinion. No, that's not the line of cases I'm thinking about, but never mind if you're not familiar with it. Our position is that California law applies to whether a contract is formed or not, and California procedure as to how you enter a judgment does not apply in the federal courts. For instance, Section 664.6 that's extensively talked about in the appellant's brief, that does not apply in the federal courts, and in essence the ruling that appellants ask for here would cause California's Rule 664.6 to now apply in federal courts, or at least apply in patent cases. Well, if we conclude that it did apply in federal court, what should we do? Other than an issue about whether there was an actual agreement. No, and the reason why that is, is because even if you did apply Section 664.6, which applies to summary enforcements, and that's a situation where the court, without holding any other proceedings, gets a settlement and enters a judgment immediately without anything else. And the case that was cited, the California Supreme Court case, talking about that is levy versus superior court, and in that case, and in the Alludian case as well, in a footnote, the courts say that's not an exclusive procedure for imposing a judgment in a case. It just means if you're going to do a summary enforcement, the California legislature has said, trial courts, here's what you have to do. You have to have the parties either in court, actual parties, saying the words that they agree, or you have to have a writing that's signed by those parties. Well, what about the client renewing the agreement with the lawyer and authorizing the lawyer to agree on the client's behalf? Is that sufficient under the California statute? It depends on what you want to do. If you want to immediately enforce it, the question is under 664.6. If you want summary procedures, that doesn't count? If you want summary procedure, you have to have the party involved personally. But if you don't... Personally to sign it or to be in open court. Yes. And that's what the Alludian case says for that purpose. Judge Carter cited it for another purpose, and that's one of the three points I wanted to make, was that Judge Carter actually properly applied the Alludian case for the purposes which he cited in his order. He was citing it for the question of, is there a formation of a contract? And he looked at the Alludian case and said, you have what you need to have the material terms in front of them. I want to go back to something the opposing counsel started off with. And he said, what did the term safety utility knife mean? And I think the question he asked really illustrates the problem here because that's actually a new issue. That wasn't something that was negotiated over by the parties, and that was not a sticking point. So that's actually a new issue that's kind of come up between the parties. The sticking point between the parties was not what the definition of safety utility knife was for purposes of getting the agreement signed. The disagreement between the parties was what is the definition of party in that section? Well, that seems kind of irrelevant for present purposes as to what the correct construction of the agreement is. The real question is, does the district court have the right or obligation to interpret this agreement having entered it in connection with the settlement? So what's the answer to that? The answer is no. And it goes back to that point that I was making, Your Honor, because anybody could come into a case after the fact. Parties are always unhappy with settlements after the fact. There's always going to be settler's remorse. And so anybody after the fact could come in and say, I have a different interpretation of this particular term. Therefore, six weeks before, there was no meeting of the mind, and therefore you, district court, are forced now to hold an evidentiary hearing for me. What do you understand the district court to have done here at page 71 where there's some suggestion that if something comes up, we can take it off of what I call a JS6 file? What did you understand him to mean by that? What I understand was he said if there's, I think what opposing counsel said, if there's some little nit that comes up, he's not concerned because we have the material terms. In fact, one of the material terms was that the written terms are going to reflect the material terms. And so he thought it was not going to be an issue because we have an agreement. Well, what was he talking about then? What he talked about right there, he said if there's some little issue that comes up, it's not going to be significant because we've got the core and the essential material terms of an agreement in place. But isn't he suggesting that there are some circumstances in which he's going to have something further to do? I think he thinks it would be a non-issue of anything that would come back. He could kind of take care of it. And frankly, that's... What's the if is the question. I mean, what, he seemed to think that something might come back to him. What was he thinking about? What do you think? What did you understand him to be saying? What I understood was that when he mentioned the 15th page, I think he was thinking something very picayune that would be further down and kind of a minor issue that would pop up. A minor issue of interpretation? Yes. No, really? Not interpretation. I disagree that the... Well, he said that and he says, I'm not going to be too concerned. So, and then he says, this is the basic structure. Basic structure is pretty vague and global, right? I mean, he doesn't say these are the precise terms and no one can deviate from them and everybody understands what they mean. He says this is the basic structure. But I think that the language that Your Honor had quoted previously at lines 8 through 12 was, this is binding, by the way. This is now binding between the parties. If we get down to the third paragraph of the 15th page, I'm not going to be concerned. If he hadn't prefaced it with, this is binding between the parties, that second clause might mean something different, but I think he was pretty clear. Yeah, but then you get down to what your friend was pointing us to at line 22. He says if something comes up, we can always take it off of what I call the J6 file. I don't believe it is. I don't know what that refers to. Just a comment. The J6 is just the inactive case files at the district court. That's just a category they do and they stamp it on the top of the document as being a J6. Yeah, but that suggests that if something comes up, he might have a further role with respect to the settlement agreement. And I think what we're trying to do is to understand what further role he could have and in what circumstances. You say, well, he wasn't contemplating that he would provide advice as to how to interpret the agreement, but what's he talking about then? Well, what he was talking about was if the parties can't get some written agreement or get something ironed out completely, he could take care of that. In fact, that's just what he did. He had the parties on May 17th back into the court and he brought the parties back into chambers, talked to them at length, got the record, read it, and ultimately at the end of the day determined that the terms were clear. We knew what the material terms of the agreement was. There was a cent on the record that we had a contract under California law and then he deemed that he had no more authority. There was no case or controversy. Did we have a transcript of that chambers meeting? No, the chambers meeting was not.  because the parties showed up at 7 a.m. and you can look at the transcript and it's 4 p.m. and so we had a pretty lengthy day there and the part of the record is just a few pages long and it's on A090 is the record that we're referring to and that's just the one where the judge looks at it and determines that it is a binding agreement. He's not going to do anything further. Well, in any event, it appears that he didn't think that he'd reserved authority to interpret the agreement. At least in the absence of a dispute that would trigger the requirement of interpreting it along the lines of what Mr. Dickey stated. Exactly, and the questions in the appellate cases are is there assent between the parties and is there material terms? Is there a complete agreement there? In this case there was and when you have that third element where the parties want interpretation of a term and they want to give them advice as to what's going on in the future, courts refuse to do that. Mr. Brown, Mr. Dickey laid out a scenario that would, in his view, require an interpretation agreement namely a lawsuit by Black and Decker claiming patent infringement and a defense based upon paragraph 2 of this document. Now you agree that would be a situation where one would have to interpret that provision? Right, and I think that gets to the point, Your Honor. You agree with that? I totally agree with that, Your Honor. What are you agreeing with? Are you agreeing with the agreement would have to be interpreted in the infringement suit or are you agreeing that you'd have to come back to Judge Carter to get the interpretation? You do not have to come back to Judge Carter to get that. You have a contract that's been formed in California between two parties on March 20th. That contract, it may someday need to be construed by a court to tell you what the legal effect is and someday you may go to a court and the court may look at that and it may adopt a definition that's exactly what the appellant said here in terms of what's a safety utility knife, who are the parties. In fact, every agreement that's drafted or agreed on by parties is probably subject to some interpretation and the parties have to go down the road. But isn't that enormously inefficient given the context here? You're right, that might be necessary if nobody had figured out the dispute until three years down the road. But isn't it enormously inefficient because the ultimate finder with regard to this dispute is going to, I mean the arguments are going to involve what was at stake in the litigation and what went down with respect to the litigation. I mean it's sort of a repeat of stuff that this judge was part of and now somebody's going to have to revisit the entire record. I think that the rule that would be enormously inefficient is to make it so that settlement agreements cannot be relied on by parties and if there's some potential issue several years down the road that the parties can bring it up and crack open the settlement right in the beginning. You want to have settled settlement agreements and wait until there's actually a dispute between the parties. In one of the, and I think it was the May 17th hearing, Judge Carter said that he's heard the party's concerns and he thinks that they may be a little bit overblown. The appellant's concerns about some misuse of intellectual property may be entirely overblown here. The purpose of this agreement was to buy peace between the parties and have it be done. So the parties are no longer fighting in court, they're fighting out in the marketplace. But you are fighting about the interpretation of the agreement though, right now, right? Well, we're trying to uphold the agreement that we reached, the settlement agreement that we have in place. And the question is are the parties... Well, both parties are trying to do that and they're saying there's a different interpretation? But my point, Your Honor, is that the purpose of this is to buy peace between the parties and the appellants want to narrow the covenant not to sue so that there's peace only between certain parties on limited issues. But another party that's got a huge arsenal of intellectual property is not bound by the covenant not to sue. In fact, the biggest tool manufacturer in the country is not bound by this covenant not to sue. It doesn't make sense for our party in terms of buying peace. Well, it's not a matter of whether he's bound. The matter is whether his entire portfolio of intellectual property is now brought into a case where it never was in the first instance. They're not saying that they're not bound. They're complaining about one of the terms of the agreement should not be all-inclusive to bring in matters that weren't in dispute, right? That is correct, Your Honor. They are saying that. And I think the question for our party is... Well, that's right also, correct? I mean, you don't take issue with that in terms of the scope of what we're really fighting about here. Well, actually, I do because, like I said, Your Honor, it's a new issue. And if you look at the appendix, page 330, that is the proposed agreement that was sent back to us that they said that they would sign. And the issue that's raised in there is not what the definition of a safety utility knife is. And so it illustrates the point that anybody can dig through a contract and find an issue and provoke some dispute between the parties and then undo a settlement agreement. I think there are two separate issues here which get conflated to some extent. One question is whether the settlement agreement is void or voidable because it doesn't reflect a meeting of the minds. The other question is what's the interpretation of the agreement? And they're saying that either one of those things could be brought before Judge Carter, including the interpretation of the agreement. And there does seem to be a dispute. Do you agree with respect to the interpretation question that they could bring a declaratory judgment action to get an interpretation of the agreement because there's a current dispute? There's not a current dispute presently, Your Honor. There's not? No, there's not. There's not. There's no case for controversy. You're saying that you would acknowledge there's a dispute over the meaning of a provision, but there's not a dispute in the Article 3 sense? There's not a dispute in the Article 3 sense. And there's loads of different interpretations people can make to all the terms of any agreement. But in this case, there's no case for controversy. No action has been taken that would arise a case under Section 2201. Supposing Stanley sends out a letter saying, we intend to... Or the other side sends out a letter saying... Your client sends out a letter saying, we intend to market a certain product. And we feel that we're entitled to do this under Paragraph 2 of the settlement agreement dated whatever. And a letter comes back saying, no, you're not entitled to do it. The agreement doesn't mean what you say. Would you say at that point there would be a basis for declaratory judgment jurisdiction? Under Section 2201 and 2202, I'm not certain whether that would be, but I would agree with Your Honor that there could be circumstances arising in the future where you could provoke a declaratory relief fight between the parties. But that has to do with interaction between the parties. And I think my client could avoid that by the way it behaves in the future. It's not in my client's interest as a company with five employees to pick a battle with Stanley Black & Decker that is a 600-pound gorilla out there in the industry. They could squash my client. In other words, you're saying it's not in your client's interest to go out and introduce a product that is arguably covered by a Stanley patent. No, my client was just trying to buy peace. And Stanley has got... They wanted to amend the agreement. Why didn't we amend the agreement? Yeah, was that on the table? Like, let's just take this provision out? Yeah, they wanted to take the provision out. And it goes back to my question. They've got this enormous arsenal of intellectual property. The question is not whether it would happen in the future. The question is whether today Stanley Black & Decker would say, oh gee, we've got the huge, huge portfolio of intellectual property. You know, Spellbound, I think six years ago your product you were selling, that was infringing one of our... They'll look up and they'll find... You know, Stanley Black & Decker purports to own the word safety knife, the name safety knife. They have a trademark on that. And so they could go back and find anything we could do in their portfolio and say, you know, you tangled with us, you little company, now you're gonna get yours. And we're gonna come after you and we're gonna squash you because you tangled with us. And they have a big portfolio and they can do that. And we wanted to have peace and protection from that. And so all the parties were gonna covenant not to sue so that we would go on about selling and they would go on about selling. And that's what this is about. So given what the discussion that's... took place in the district court in May of 2012, and the judge's ruling and what's in the briefs and what's here today, why isn't it in the interest of the parties to just go back and work out some kind of an amendment to the agreement? Because that would be a separate agreement and the parties wouldn't necessarily agree. They can talk right now and agree at once. I mean, parties can amend it. You can have a contract and parties can certainly agree at a certain point in time to amend a provision of the agreement. I think the answer is that Rule 60 doesn't require it and it's not an abuse of discretion for the court... No, I'm not saying... I'm not talking about whether a rule requires it. I'm just saying maybe wouldn't it be a good idea in this case because it appears that both you and Mr. Dickey want to avoid future entanglements that are to the disadvantage of your clients and it would seem that an entanglement of the kind that we're talking about here could be easily avoided by an amendment of the agreement. I just don't know... Leaving aside the requirements of Rule 60 or anything like that. Notwithstanding the agreement between me and opposing counsel, these parties have disagreed a lot and I think it would be very optimistic to say these parties are going to come and get together and sing Kumbaya and have a group hug and agree on anything. Well, they don't have to be as cozy as that, but it might be mutually advantageous for them to come to an agreement as to what this provision does or doesn't mean. That has crossed the minds of a lot of people, Your Honor, but as to whether there was an agreement in the first place on March 20th, we're very solid in terms of that was an agreement and it was a settlement under California law. Thank you, Mr. Brown. Mr. Dickey. Thank you, Your Honor. I just have four very quick little points. First, I think there's a dispute right now. Mr. Brown refused to respond to Judge Probst's question about isn't the entire arsenal of STEMI IP at issue here? And there was never an answer to that question. Clearly, Spellbound is using its interpretation to try to bootstrap itself and exploit the ambiguity that exists in the intent and the meaning of the words. Mr. Brown says, Your Honor, he said that, for the record, he'll speak for himself, that his client would be foolhardy. He'd be squashed like a bug if he tried to... I mean, you heard him say something along those lines. Well, I've heard that before, and I've also heard him say that because of this agreement, his client has rights to increase the value of his company in terms of putting it into play because it has rights with respect to intellectual property, which was not at issue in this case. And therefore, that gives Spellbound, if you will, some leverage in negotiating... Yeah, but we're on shaky ground here to be talking about representations made after the fact. I understand that, but I'm just saying in response to Judge Shaw's question that, yes, I've heard that before, but I think that one has to consider all of the facts. Secondly, in terms of a DEC suit, I think there is a DEC suit, but what Judge Prost alluded to is the fact that all of the key facts and evidence that would ever be involved were all before the trial court. It would have been so easy to simply resolve that issue at the time for judicial economy's sake, and clearly California law permits the district court to interpret things where there's an ambiguity or where it's left open an issue with respect to a settlement. So clearly, I believe the district court had more than enough jurisdiction in light of the comments and the scenario as to what happened in the trial court at that time. Would he say, could the district court have said, there is a binding agreement and here's what it means? Absolutely. Absolutely, and that's quite frankly what I... That's what you wanted him to do, right? That is exactly what we wanted him to do, so we would know what the intent was, what the agreement meant, because absent some... And then do you have a cause of action? What if you don't like the result? Well, then I think that there's probably... If we disagree with the result after an evidentiary hearing or a construction, then the law provides for an appeal from that and we're left with whatever record it is. The problem that we have at this point is there's no record, there's no finding. Nowhere in the papers does the judge say the agreement was unambiguous. Nowhere does the judge make any finding that the parties have no dispute. Nowhere does he address the issue of an evidentiary hearing. He said there was an agreement, right? He said there was an agreement, but he didn't say what the agreement was or what it meant. And in the face of a Rule 60 motion, not to have addressed the question that was raised, it says we ask you for an evidentiary hearing. We believe under California law the failure of the district court to hold an evidentiary hearing or respond to it in and of itself is an abuse of discretion. We don't know what he was thinking and we had no opportunity to present all of the evidence on that issue. Therefore, we're asking... What issue? On the issue of... How to interpret the agreement? I think Your Honor phrased it correctly. There were two issues. One, whether there was a formation and intention of the parties and what it meant. And then what do the words mean assuming there is an agreement so that anybody looking at this would understand... So is your suggestion that he needed to hold an evidentiary hearing on both issues? I think he needs to hold an evidentiary hearing and make a determination based on that evidentiary hearing. Was there a meeting of the minds on the scope of the covenant not to sue in the first place? So the issue you wanted to address is the scope of the agreement. The scope of the covenant not to sue. That was the evidentiary... The need for the evidentiary hearing was about that. Yes, it's the covenant not to sue which is the issue here because that then does, we believe, and what they're saying is we can copy certain intellectual property of standing that was never there. Okay, I think we understand. Okay, thank you Mr. Heapy. Thank you very much. Thank both counsel. The case is submitted.